**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHN J. MENCHACA,

Plaintiff,

v.

COMPAGNIE MONEGASQUE DE BANQUE *et al.*,

Defendants.

Case No.: 2-26-cv-00028-MEMF

**ORDER DENYING COMPAGNIE MONÉGASQUE DE BANQUE'S MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL OF THE BANKRUPTCY COURT'S NOVEMBER 14, 2025, ORDER DENYING CMB'S MOTION TO DISMISS [DKT. NO. 1]**

**JS-6**

Before the Court is Notice of Motion and Motion for Leave Interlocutory Appeal filed by Defendant Compagnie Monegasque De Banque ("CMB"). For the reasons stated herein, the Motion is DENIED.

# I. Background

## A. Factual Background[1]

Defendant CMB is a foreign bank. Compl. ¶ 7. It conducts business from, among other locations, Monaco. *Id.* CMB utilizes the U.S. banking system to conduct international business. *Id.*

Mitra Holdings SA ("Mitra") is a Luxembourg corporation. *Id.* ¶ 8. Mitra exists to hold title to a property known as Villa La Tortue, and located at 75 de la Cornich d'Or, Theoule-sur-Mer, Cote d'Azur (the "Villa"). *Id.* Mitra owns no assets other than the Villa. *Id.*

In August 2006, Ashot Gevork Egiazarian and his former spouse Natalia Tsagolova purchased the Villa for 9.2 million euros and took title to the Villa through Mitra. *Id.* ¶ 17. In 2019, the Villa was refinanced with CMB. *Id.* ¶ 18. The Villa was, at one time, encumbered by an approximately $8 million lien held by CMB. *Id.* ¶ 19.

Mitra was formed and is owned entirely by Egiazarian. *Id.* ¶ 8. Egiazarian appointed "nominees" to hold assets on his behalf to protect his assets. *Id.* ¶ 16. Two of these nominees are Artem Yegiarzaryan ("Artem") and Suren Yegiarzaryan ("Suren"). *Id.* ¶¶ 12–13. Artem and Suren are U.S. citizens. *Id.*

On January 1, 2010, Artem and Suren executed a Nominee Shareholder Agreement in Beverly Hills, California. Dkt. No. 182. Both Artem and Suren are nominal owners of Mitra's equity, but the beneficial ownership of Mitra has always belonged to Egiazarian and Tsagolova. Compl. ¶¶ 12–13, 35.

In 2020, Vitaly Ivanovich Smagin brought a federal action against Egiazarian, CMB, Suren, and Artem for civil RICO liability in the Central District of California. *Id.* ¶ 7; *see also Vitaly*

---

[1] The facts described here are derived from the Complaint. Adv. Dkt. No. 1 ("Compl."). For the purposes of the Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

*Ivanovich Smagin v. Compagnie Monegasque De Banque et al*., No. 2:20-cv-11236-RGK-MAA (C.D. Cal.) (the "Smagin Action").

In May of 2024, the Smagin Action settled. *Id.* ¶ 19. Pursuant to a confidential May 2024 settlement, CMB signed a settlement agreement ("Settlement"). *Id.* ¶ 7. It provides that it will be governed by California law and subject to binding arbitration in California. *Id.* ¶ 7.

The Settlement provided that (A) "[a]ny controversy or claim arising out of or relating to the [Settlement] or the performance of any Party thereunder including any alleged breach of the terms or conditions of this Agreement ('Settlement Dispute') shall be governed by California law;" and (B) the parties, which included Egiazarian and CMB, were "to submit any Settlement Dispute to final and binding arbitration under the JAMS international arbitration rules before the Honorable James Ware (Ret.) of Judicial Arbitration and Mediation Services (JAMS)" in California. *Id.* On or about September 18, 2024, Debtor and CMB appeared in proceedings before Judge Ware until the filing of the Bankruptcy Case without challenging personal jurisdiction (the "JAMS Arbitration"). *Id*. And the Settlement Agreement contained a general release provision. *Id.* ¶ 19.

**B. Procedural History**

On May 8, 2025, Egiazarian filed a voluntary petition under chapter 7 of the Bankruptcy Code. Compl. ¶ 5. On the same date, Plaintiff John J. Menchaca was duly appointed to the role of Chapter 7 Trustee in connection with the Bankruptcy Case. *Id.* ¶ 6.

On May 19, 2025, Menchaca filed a complaint that seeks, among other things, that none of the defendants (including CMB, Mitra, Suren, and Artem) in the Action holds any lien against the foregoing assets. *Id.* ¶ 19. These assets, among other properties, include the Villa. *Id.*

On September 16, 2025, CMB filed the Motion to Dismiss Adversary Proceeding, arguing the Action should be dismissed for a lack of in personam jurisdiction. Adv. Dkt. No. 62. On November 14, 2025, the Bankruptcy Court denied CMB's motion to dismiss for lack of in personam jurisdiction. Adv. Dkt. No. 104. ("Bankruptcy Court Order" or "BCO").

On January 5, 2026, CMB appealed the Bankruptcy Court's order denying CMB's Motion to Dismiss before this Court. Dkt. No. 1 ("Motion"). On April 6, 2026, Menchaca filed an opposition. Dkt. No. 10 ("Opp."). On April 13, 2026, CMB filed a Reply. Dkt. No. 18 ("Reply"). The parties did not request a hearing on the Motion.

## II. <u>Applicable Law</u>

A party seeking leave to take interlocutory appeal must establish that (1) there is a meritorious issue on a controlling question of law, (2) as to which there are substantial grounds for different of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b).

First, a question of law is "controlling" when the resolution of the issue on appeal could materially affect the outcome of litigation in the district court. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). In *Cement Antitrust Litig.*, the court held that a Judge's recusal order does not raise a controlling question of law because it neither affect district court's ability to render a binding decision nor materially affect the outcome of the litigation. *Id.* at 1027.

Secondly, a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point . . . or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). But "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* In *Couch*, the court held that there is no substantial ground for difference of opinion sufficient to support an interlocutory appeal because the defendants failed to provide anything that conflicts with the district court's application of law. *Id.* at 634.

Finally, the appeal must be immediate and materially advance the ultimate termination of the litigation. The third prong of the interlocutory appeal is closely tied to the first requirement that the order involve a controlling question of law. § 3930 Criteria for Permissive Appeal, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.). The interlocutory appeal need not have a "final, dispositive effect" on the litigation, it only needs to "materially advance the litigation." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

## III. <u>Discussion</u>

CMB seeks an interlocutory appeal on two matters on which it contends the Bankruptcy Court Order denying CMB's motion to dismiss errs. The first is that, "in denying CMB's motion, the Bankruptcy Court erroneously interpreted its supposed *in rem* jurisdiction over property to convey *in personam* jurisdiction over CMB." Motion at 1. The second is that, per CMB, "the Bankruptcy Court also erred in concluding that it had *in rem* jurisdiction in the first place." *Id.* Menchaca denies that either of these questions satisfy the requirements for interlocutory appeal. Opp. at 3.

For the reasons below, this Court concludes that neither question qualifies for interlocutory appeal. To that end, the Motion is denied.

### A. CMB's first request for interlocutory appeal is denied.

i. <u>Because the Bankruptcy Court found it had both *in personam* and *in rem* jurisdiction, the question CMB seeks to appeal is not one raised by the Bankruptcy Court Order.</u>

As a preliminary matter, CMB's first proposed question for interlocutory appeal—whether the Bankruptcy Court "erroneously interpreted its supposed *in rem* jurisdiction to convey *in personam* jurisdiction over CMB"—does not align with this Court's reading of the Bankruptcy Court's Order. Motion at 1. To that end, because CMB effectively seeks appeal of a question that the Order does not raise, leave for an interlocutory appeal is not warranted.

Indeed, the Bankruptcy Court Order finds—and separately justifies, applying two independent tests—that, based on the Complaint's well-pleaded allegations, it had both *in rem* and *in personam* jurisdiction over CMB. *See* BCO at 9 ("These [*Dole v. Watts*] factors weigh strongly in

favor of an exercise of in personam jurisdiction in the instant case."); *id.* at 10–11 ("[Menchaca] claims [Egiazarian] and his ex-wife *have always* been the true beneficial owners of Mitra and that Mitra is a shell entity whose corporate form may be disregarded, such that the Villa already constitutes property of the Estate. Therefore, the bankruptcy court has *in rem* jurisdiction to determine the validity of any interests in and liens against the Villa . . . .").

The Bankruptcy Court Order proceeded as follows. First, the Court found it had specific personal jurisdiction over CMB. BCO at 7. Applying the Ninth Circuit personal jurisdiction reasonableness test to the well-pleaded factual allegations in the Complaint, it concluded that specific personal jurisdiction exists because: (1) CMB availed itself to the U.S. market by lending funds to U.S. citizens; (2) CMB voluntarily agreed to resolve all disputes under the Settlement Agreement in California; and (3) CMB affirmatively entered arbitration in California without challenging personal jurisdiction. *Id.* at 7–10. Second, the Bankruptcy Court found that, even "if it did not have in personam jurisdiction over CMB, it would nevertheless have *in rem* jurisdiction." *Id.* at 11. As the Bankruptcy Court explained, its finding of *in rem* jurisdiction is supported by 28 U.S.C. § 1334(e) and its grant of exclusive jurisdiction over "all property of the debtor's estate, wherever located." *Id.* at 10. And the Complaint alleged that the debtor, Egiazarian, had always co-owned the Villa. Compl. ¶ 17. To that end, as Menchaca puts it, "CMB's argument rests on a fundamental mischaracterization of the [Bankruptcy Court] Order." Opp. at 17.

Taken together, because the Bankruptcy Court's Order concluded that the Court had both *in personam* and *in rem* jurisdiction over CMB, CMB's first request for interlocutory appeal fails at the threshold.

ii. <u>Even if the Bankruptcy Court Order determined that it had *in personam* jurisdiction flowing from its *in rem* jurisdiction, CMB has not shown that an interlocutory appeal is warranted.</u>

Even if the Bankruptcy Court Order had not concluded that the Bankruptcy Court had in personam jurisdiction over CMB, an interlocutory review based on the Bankruptcy Court's personal

jurisdiction holding is nonetheless inappropriate. The holding does not raise a controlling question of law, there is no substantial differences of opinion as to whether in personam jurisdiction is required when a court has in rem jurisdiction, and interlocutory review would not materially advance the litigation.

It bears mention that both the Supreme Court and the Ninth Circuit have held that a court can have *in rem* jurisdiction withou*t in personam* jurisdiction. In *Tennessee Student Assistance Corp v. Hood*, the Supreme Court held that "the Bankruptcy Court's in rem jurisdiction allows it to adjudicate Egiazarian 's discharge claim without in personam jurisdiction over the State." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 453 (2004). The court's in personam jurisdiction over the person of all defendants or claimants to the property is irrelevant if the court has in rem jurisdiction. 4A Wright & Miller's Federal Practice & Procedure § 1070 (4th ed.). Moreover, the Ninth Circuit in *Obaid*, relying on *Hood*, held that "jurisdiction over the person is irrelevant if the court has jurisdiction over the property." *United States v. Obaid*, 971 F.3d 1095, 1102 (9th Cir. 2020). The Ninth Circuit also holds that *in rem* bankruptcy jurisdiction "essentially creates a fiction that the property—regardless of actual location—is legally located within the jurisdictional boundaries of the district in which the court sits." *Id.* (citation and quotations omitted).

*1. CMB does not raise a controlling question of law.*

First, the Bankruptcy Court's personal jurisdiction holding does not raise a controlling question of law. Since the Bankruptcy Court has *in rem* jurisdiction over CMB, *in personam* jurisdiction is not required because the two jurisdictions can stand alone. Like the bankruptcy courts referenced in *Hood* and *Obaid*, the Bankruptcy Court here does not have to establish *in personam* jurisdiction before asserting *in rem* jurisdiction over CMB. Bankruptcy Court's *in rem* jurisdiction over CMB alone, is enough to establish jurisdictional power over CMB.

Arguing for the opposite result, the Motion states that, "without *in personam* jurisdiction, the Bankruptcy Court lacks authority to enjoin CMB . . . and the automatic stay will not be enforceable

over CMB." Motion at 6. But the cited authority does not support this proposition. CMB proposes that *In re Estate of Ferdinand Marcos Human Rights Litigation.*, 94 F.3d 539, 545 (9th Cir. 1996), shows that "a court can only enjoin entities over which it has personal jurisdiction, and emphasizing that a court should not issue an injunction that it cannot enforce." Motion at 6–7. But this case does little to support that *in rem* jurisdiction would not be enough in a case like this one if *in personam* jurisdiction did not exist: There, *in rem* jurisdiction was not at issue at all. This makes sense, as the enjoined party discussed there was the Republic of the Philippines. *In re Est. of Ferdinand Marcos*, 94 F.3d at 541–42. The case did not, as *in rem* jurisdiction cases do, turn on the court's "jurisdiction over [] property in dispute." *Obaid*, 971 F.3d at 1099 (quoting *United States v. Ursery*, 518 U.S. 267, 275 (1996)).

In sum, CMB raises no controlling question of law.

2. *Substantial differences of opinion do not exist as to whether the Bankruptcy Court required* in personam *jurisdiction.*

Secondly, substantial differences of opinion do not exist as to the Bankruptcy Court's *in personam* jurisdiction holding—even if it had not separately found *in rem* jurisdiction.

In CMB's view, the Bankruptcy Court's holding raises substantial differences of opinion because the Seventh Circuit held in *Sheehan* that the Bankruptcy Court could not assert in personam jurisdiction without in rem jurisdiction. *In re Sheehan*, 48 F.4th 513 (7th Cir. 2022). But, even accepting without deciding that *Sheehan* would control this case differently, that a nonbinding case supports CMB's position does not mean that appellate review is warranted, *Sheehan*, of course, binds neither the Bankruptcy Court nor this Court. And, as far as this Court is aware, no binding Ninth Circuit law supports CMB's position that the Bankruptcy Court's ability to assert control over the property depends on whether the court has personal jurisdiction over that property. On the contrary, cases like *Hood* and *Obaid* have held that Bankruptcy Court's in rem jurisdiction allows it

to adjudicate claims without in personam jurisdiction. To that end, the weight of authority does not appear to support CMB's position.

Under these circumstances, substantial differences of opinion do *not* exist to the Bankruptcy Court's decision as to its in personam jurisdiction over CMB.

*3. Interlocutory review would not materially advance the litigation.*

The third requirement—whether an interlocutory appeal would materially advance the litigation—is similarly not met. In response to this prong, CMB only contends that interlocutory review would "materially advance the litigation," and conclusory tells this Court that "[t]he same logic applies here" as it did in two Ninth Circuit cases where interlocutory appeals were granted from motions to dismiss. *See* Motion at 11–12. But these authorities only stand for the generalized proposition that an interlocutory appeal *could* be granted from the denial of a motion to dismiss on jurisdictional grounds—not that, here, this Court *should* do so. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1167 (9th Cir. 2006) (noting that the trial court granted a motion for interlocutory appeal); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1407 (9th Cir. 1989) (same). That other courts would grant interlocutory appeals does not persuade this Court that it should follow suit. After all, it is possible that the litigants in *Tuazon* and *Go-Video* showed what CMB failed to demonstrate here—that is, that a controlling question of law existed that was properly certifiable for interlocutory appeal.

This is in stark contrast with CMB's showing. As the Opposition notes, there are no specific reasons to think that an *interlocutory* appeal is warranted on this question, or that it will provide any particular benefit to this litigation to resolve this question now. *See* Opp. at 23. At most, in support of its second request, CMB explains that if it prevailed during an interlocutory appeal and the Ninth Circuit confirmed that the Bankruptcy Court lacked jurisdiction over CMB and the case was ultimately dismissed, "then that confirms that CMB can proceed with its foreclosure sale." Motion at 16. But, of course, any party seeking to file an immediate appeal would be benefited by prevailing,

in that it could take post-litigation actions sooner. This Court has no doubt that CMB would prefer a sooner resolution. But this does not, by definition, constitute reason to think that immediate appellate review "may materially advance the litigation." 28 U.S.C. § 1292(b). Put another way, CMB's wish to proceed with a foreclosure sale would not advance this litigation.

* * *

In sum, because CMB seeks to certify a question that the Bankruptcy Court Order did not raise—and because Section 1292(b)'s standards are not met in any event—the first request fails.

**A. CMB's second request for interlocutory appeal is denied.**

This Court next turns to CMB's second basis for seeking interlocutory appeal: its position that "the Bankruptcy Court erred in concluding that it had *in rem* jurisdiction in the first place," on the theory that the Bankruptcy Court's application of a "prima facie case" standard was incorrect. For the reasons below, this Court denies the request.

i. <u>CMB does not raise a controlling question of law.</u>

The first requirement under Section 1292(b) requires this Court to consider whether CMB raises a "controlling question of law." 28 U.S.C. § 1292(b). The second request fails this test: The question CMB proposes to appeal is legal, but not controlling.

This Court has no trouble concluding, and the Opposition does not seem to dispute, that CMB's proposed appeal would ask a question based in law. But, as this Court has explained, the Bankruptcy Court Order does not rest on whether the Bankruptcy Court found *in rem* jurisdiction, or what standard it applied. This is because the Court explained that its *in personam* and *in rem* jurisdictional conclusions were independently sufficient bases to deny the motion to dismiss. *See* BCO at 11 ("Therefore, *even if the Court did not have in personam jurisdiction over CMB*, it would nevertheless have *in rem* jurisdiction to determine whether CMB's lien against the Villa remains enforceable in light of the releases contained in the Settlement Agreement." (emphasis added)); *see*

*also* Opp. at 19–20. In other words, the *in rem* jurisdictional finding would not, even if reversed, control the disposition of CMB's motion to dismiss.

The question of whether a Bankruptcy Court can exercise in rem jurisdiction based on a prima facie case is a question of law, not fact, because its resolution will "materially affect the outcome of the litigation." The Bankruptcy Court's jurisdiction over CMB is at the center of this case. If the Bankruptcy Court can exercise in rem jurisdiction based on a prima facie case, then the Bankruptcy Court Order is binding. On the other hand, if the Bankruptcy Court cannot exercise in rem jurisdiction based on a prima facie case, then it raises issues to the Bankruptcy Court Order.

ii. <u>CMB has not shown that substantial differences of opinion exist on its proposed question.</u>

Next, at issue is whether CMB has shown that substantial differences of opinion exist as to the question that it proposes to appeal. For the reasons below, it has not.

As this Court has explained, this prong is met where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point . . . or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633. Unlike with the first question, CMB does not appear to propose that other circuits are divided on whether a *prima facie* case suffices to establish *in rem* jurisdiction for the purposes of a motion to dismiss. To that end, the only question left is whether CMB has shown that its proposed question is a novel, ambiguous question of first impression.

Against the *Couch* benchmark, CMB falls short. CMB argues, relying on a nonbinding case, that "[i]n analogous situations where a court's jurisdiction depends on factual allegations, courts evaluate those allegations under a rigorous standard." Motion at 14 (citing *Lu v. Cent. Bank*, No. 12-317, 2013 WL 12128821 (C.D. Cal. June 18, 2013)). But *Lu* is wholly dissimilar. There, the Court's dismissal of the case rested on its analysis of the plaintiff's discussion of "three exceptions to the [Foreign Sovereign Immunities Act] and contends that each establishes a basis for jurisdiction"—

there, the Court concluded, the plaintiff had not made the proper jurisdictional showing. *Id.* at *4; *see also id.* ("Thus, although Plaintiff identifies specific FSIA exceptions, the FAC does not provide any explanation with respect to how any of them applies in this matter."). *Lu* did not involve a showing of *in rem* jurisdiction at all—or any showing of jurisdiction that was described as prima facie made out by the plaintiff. *See generally id.* And the case does not imply that all courts must evaluate allegations under a rigorous standard, nor does it seem to serve as an example of what CMB proposes the Bankruptcy Court should have done. To that end, its utility here is limited—and, because this is the only case CMB cites for the proposition that courts answer analogous questions similarly, this Court is not persuaded that CMB has shown that fair-minded jurists could reach different results on the question it proposes.

Of course, none of this prevents CMB from pursuing an appeal as of right in due course—but its briefing does not make the requisite showing to appeal prior to a final order.

iii. <u>CMB has not shown that an immediate appeal may materially advance the litigation.</u>

For the reasons discussed regarding CMB's first request for interlocutory appeal, CMB has failed to explain how an immediate appeal would advance the litigation. *See United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) ("§ 1292(b) is to be applied sparingly and only in exceptional cases . . . ."). Absent a showing on this third factor, the request cannot be granted.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Motion is DENIED.

IT IS SO ORDERED.



Dated: September 30, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge